UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 1:21-CR-623 (CRC) |
| MICHAEL ECKERMAN and : | |
| KIRSTYN NIEMELA, : | |
| : | |
| Defendants. : | |

**UNITED STATES' MOTION *IN LIMINE* REGARDING EVIDENCE ABOUT THE SPECIFIC LOCATIONS OF U.S. CAPITOL POLICE SURVEILLANCE CAMERAS**

The United States of America moves *in limine*, pursuant to Fed. R. Evid. 401, 403, and 611(b), to restrict the presentation of evidence regarding the specific position of U.S. Capitol Police surveillance cameras.

## INTRODUCTION

To meet its burden of proof at trial, the government will present video evidence from a variety of sources, including U.S. Capitol Police ("USCP") surveillance footage. As detailed in the Declaration of Thomas A. DiBiase (Exhibit 1), the Capitol Police maintains an extensive closed-circuit video system that includes cameras inside the Capitol Building, inside other buildings within the Capitol complex, and outside on Capitol grounds. These cameras captured thousands of hours of footage from the breach of the Capitol and have been instrumental in documenting the events of January 6, 2021.

The USCP's surveillance system, however, also serves an important and ongoing function in protecting Congress and, by extension, national security. In particular, the footage from the system is subject to limitations and controls on access and dissemination. *See* Exhibit 1. And, to find relevant footage from the USCP's surveillance system and adequately prepare for trial, one would need to use maps that display the locations of the interior and exterior cameras. The

government has therefore provided the defense with maps that display these locations. Due to the sensitive nature of these items, however, the government seeks an order limiting the defense from probing the exact locations of USCP surveillance cameras during cross-examination or from using the maps, which show each camera's physical location, as exhibits at trial.[1]

## ARGUMENT

### I. This Court Has the Discretion to Limit the Presentation of Evidence and Cross-Examination of Witnesses at Trial

It is well established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States*, 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which agent did not testify on direct examination and which did not pertain to charges in case), *overruled on other grounds* by *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination

---

[1] These maps have been disclosed to the defendants but have been designated Highly Sensitive pursuant to the terms of the protective order in place. Moreover, these maps have been designated as "Security Information" under 2 U.S.C. §1979, which forbids their use without the approval of the Capitol Police Board.

include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative or marginally relevant questioning. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

While limiting a defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his or her own case-in-chief. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp*, 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with respect to "matters only relative to an affirmative defense and not brought into the case on direct"). Preventing the defendants from exploring the topics identified above will not infringe their Confrontation Clause rights because the exact positions of cameras and the camera map implicate national security concerns and are of marginal probative value. Furthermore, any probative value can be addressed without compromising the USCP's protective function.

  **II. The Defendants Should Be Precluded from Questioning Witnesses About the Exact Positions of Capitol Police Cameras, Introducing Such Evidence, or Admitting Capitol Police Maps of Camera Coverage.**

Here, a substantial portion of the government's video evidence will come from sources other than the USCP, such as body-worn camera footage and videos taken by journalists and other

rioters. But nonetheless, to establish a violation of 18 U.S.C. § 231(a)(3) (Count One), the government must prove that a civil disorder occurred. Thus, to prove Count One—as well as the violations of 18 U.S.C. §§ 111(a)(1) and 1752(a)(1), (2), and (4) charged in Counts Three, Four, and Five, respectively, and the violations of 40 U.S.C. §§ 5104(e)(2)(D), (F), and (G) charged in Counts Six, Seven, and Eight, respectively—the government will offer footage from USCP cameras showing the crowd occupying restricted areas, breaching police lines, and assaulting police. A USCP witness is expected to explain how the USCP monitored and responded to the violent mob.[2]

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded in light of the ongoing security needs of the Capitol. The defense can probe what USCP's cameras show, and what they do not, by asking about the general location of each camera. For example, a camera positioned inside the Lower West Terrace tunnel can be described as "inside the tunnel, facing out" without describing its exact height and depth within the tunnel and without showing a picture of the camera. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all USCP cameras would risk compromising these security concerns for no additional probative value: the map contains numerous cameras installed in areas of the Capitol that the defendants did not visit.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger to national security. *See United States v. Mohammed*, 410

---

[2] Based on the evidence routinely admitted in prior Capitol Breach trials, the government anticipates that the defendants will not challenge this general evidence about the existence of a civil disorder.

4

F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury or create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value). If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the general public. Immediately, anyone could learn about the USCP's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth or the veracity or bias of witnesses. *Id.*

### III. If Necessary, the Government Requests an *In Camera* Proceeding to Determine the Admissibility of Certain Evidence.

If the defense believes that presentation of the exact locations of the USCP cameras is necessary, or that presentation of the USCP map is necessary, the government requests that the Court conduct a hearing *in camera* to resolve the issue. As previously noted, disclosure of certain information could prove detrimental to the USCP's ability to protect members of Congress and affect our national security. Courts have found that such considerations justify *ex parte*, *in camera* proceedings. *See United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for *in camera* inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that *in camera* . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that *in camera* proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same). At any such hearing, the defendants

should be required to make "a proffer of great specificity" regarding the need for the evidence and the scope of his questions. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) (requiring such proffer where evidence of defendant's belief might have permissible and impermissible purposes, and careless admission would raise issues under Fed. R. Evid. 403).

## CONCLUSION

For these reasons, the United States requests that this Court enter an order, as described above, limiting the presentation of evidence about the precise locations of USCP surveillance cameras, including through the use of USCP maps. If this Court determines that an evidentiary hearing is necessary to rule on this motion, the government asks that the hearing be held *in camera*.

Dated September 30, 2022

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        UNITED STATES ATTORNEY
                                        D.C. Bar No. 481052

                                        */s/ Michael M. Gordon*
                                        MICHAEL M. GORDON
                                        Assistant United States Attorney
                                        Florida State Bar No. 1026025
                                        400 N. Tampa St., Suite 3200
                                        Tampa, Florida 33602
                                        michael.gordon3@usdoj.gov
                                        Telephone: 813-274-6370

                                        */s/ Jessica Arco*
                                        JESSICA ARCO
                                        Trial Attorney-Detailee
                                        D.C. Bar No. 1035204
                                        601 D St., NW
                                        Washington, D.C. 20530
                                        jessica.arco@usdoj.gov
                                        Telephone: 202-514-3204