UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 1:21-CR-623 (CRC) |
| MICHAEL ECKERMAN and : | |
| KIRSTYN NIEMELA, : | |
| : | |
| Defendants. : | |

**UNITED STATES' MOTION *IN LIMINE* REGARDING
CROSS-EXAMINATION OF U.S. SECRET SERVICE WITNESSES**

The United States of America moves to limit the cross-examination of witnesses with the Secret Service Agency, pursuant to Fed. R. Evid. 401, 403, and 611(b).

## INTRODUCTION

In Count One of the Superseding Indictment, defendant Michael Eckerman is charged with civil disorder during the breach of the United States Capitol on January 6, 2021, in violation of 18 U.S.C. § 231(a)(3). *See* Dkt. 24. Counts Three and Four charge defendants Michael Eckerman and Kirstyn Niemela with violating 18 U.S.C. §§ 1752(a)(1) and (2) by entering or remaining in a restricted building or grounds, and engaging in disorderly or disruptive conduct in a restricted building or grounds, during the breach of the United States Capitol on January 6, 2021. *Id.* In addition, Count Five charges defendant Eckerman with engaging in physical violence in a restricted building or grounds during the breach of the United States Capitol on January 6, 2021. *Id.* Section 1752 defines "restricted buildings or grounds" to include any building or grounds temporarily visited by a person being protected by the Secret Service. 18 U.S.C. § 1752(c)(1)(B).

To meet its burden of proof at trial, the government will call a witness from the United States Secret Service to testify, or obtain a stipulation to establish, that at the time of the Capitol breach on January 6, 2021, Secret Service agents were on duty to protect then-Vice President Mike

Pence and his two immediate family members, all of whom were present at the Capitol. This witness will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

The very nature of the Secret Service's role in protecting the Vice President and his family, however, implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security. The government therefore seeks an order limiting the cross-examination of the Secret Service witness(es) to questioning about the federally protected function performed by the Secret Service on January 6, 2021, and whether the Capitol and its grounds were "restricted" on January 6, 2021, due to the presence of the Vice President and his family and their protection by the Secret Service. Specifically, the defendants should be foreclosed from questioning the Secret Service witness(es) about the following:

1. Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur; and

2. details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

In *United States v. Cuoy Griffin*, No. 1:21-cr-92-TNM, Dkt. 92 (D.D.C. March 18, 2022), the Court granted the government's similar motion *in limine* regarding these two subject matters, noting that the defendant "does not contest that such cross-examination would be inappropriate and immaterial to the question of guilt, or the credibility of the Secret Service witness." *Id.* at 4; *see also United States v. Hale-Cusanelli*, No. 1:21-cr-37-TNM, Minute Entry (D.D.C. April 29, 2022).

**ARGUMENT**

**I.      This Court Has the Discretion to Limit Cross-Examination of Witnesses at Trial.**

It is well established that a district court has the discretion to limit cross-examination. *See Alford v. United States,* 282 U.S. 687, 694 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which agent did not testify on direct examination and which did not pertain to charges in case), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of

affirmative defense in its case-in-chief); *United States v. Stamp*, 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross-examination of government witness with respect to "matters only relative to an affirmative defense and not brought into the case on direct"). Preventing the defendants from exploring the topics identified above will not infringe their Confrontation Clause rights because those topics are not relevant to an element at issue in the case, provide no basis for impeaching the Secret Service witness, and do not implicate any affirmative defense.

**II.     Cross-Examination of Secret Service Witnesses Should Be Limited to Whether the Capitol Breach Interfered with a Federally Protected Function and Whether the Capitol Was Restricted on January 6, 2021.**

To prove Count One, the government intends to offer limited testimony about the Secret Service's protection of certain officials on January 6, 2021.  First, to establish a violation of 18 U.S.C. § 231(a)(3), the government must prove, among other things, that a civil disorder interfered with a federally protected function. 18 U.S.C. § 231(a)(3); *United States v. Red Feather*, 392 F. Supp. 916, 918-19 (D. S.D. 1975). A "federally protected function" includes any lawful function, operation, or action by a federal agency or officer. 18 U.S.C. § 232(3).  Thus, the government must prove that the January 6 breach interfered with a federal agency or a federal officer's performance of lawful duties.  To meet this element, the government intends to offer the testimony that pursuant to 18 U.S.C. § 3056(a)(1), Secret Service agents were at the Capitol on January 6, 2021, to protect Vice President Mike Pence and two members of his immediate family.[1]  A Secret Service official is further expected to explain how the events at the Capitol on that date affected the Secret Service's ability to protect Vice President Pence and his family.

---

[1] The Secret Service is authorized to protect the Vice President and his immediate family. 18 U.S.C. §§ 3056(a)(1) and (2).

Likewise, as it relates to Counts Three, Four, and Five, the government intends to offer similar testimony to establish that the Capitol and its grounds were "restricted" for purposes of § 1752(a) because the Vice President and his family were present and being protected by the Secret Service there. *See* 18 U.S.C. § 1752(c)(1)(B) (defining restricted buildings and grounds).

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant, unduly prejudicial, and an unnecessary intrusion into sensitive national security matters. The fact that the Vice President, his family, and their motorcade had to be moved for safety is relevant to whether the civil disorder adversely affected the Secret Service's ability to protect those individuals. But the Secret Service's general protocols about relocation for safety should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence).

Similarly, evidence of the nature of Secret Service protective details is not relevant in this case. The number or type of assigned agents on a protective detail does not alter the probability that the disorder interfered with the Secret Service's duties to protectees in this case, or that the Capitol and its grounds were restricted at the time. None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury or create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value). Broader cross-

examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth or the veracity or bias of witnesses. *Id.*

### III. In the Alternative, the Government Requests an *In Camera* Proceeding to Determine the Admissibility of Certain Evidence.

If this Court determines that a hearing is necessary to determine the admissibility of testimony by a witness from the Secret Service, the government requests that the hearing be conducted *in camera* and *ex parte*. As noted, in this case, disclosure of certain information could prove detrimental to the Secret Service's ability to protect high-level government officials and affect our national security. Courts have found such considerations justify *ex parte*, *in camera* proceedings. *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 968 (D.C. Cir. 2016) (finding that while *ex parte* proceedings should be employed to resolve discovery disputes only in extraordinary circumstances, they are appropriate where disclosure could lead to substantial adverse consequences, such as where a party sought intelligence materials generated in the midst of a geopolitical conflict); *United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for *in camera* inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera *ex parte* proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that *in camera* proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) (same).

## CONCLUSION

For these reasons, the United States requests that this Court enter an order, as described above, limiting the cross-examination of any witness with the Secret Service. If this Court

determines an evidentiary hearing is necessary to rule on this motion, the government asks that the hearing be held *in camera* and *ex parte*.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney
Florida State Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
michael.gordon3@usdoj.gov
Telephone: 813-274-6370

*/s/ Jessica Arco*
JESSICA ARCO
Trial Attorney-Detailee
D.C. Bar No. 1035204
601 D St., NW
Washington, D.C. 20530
jessica.arco@usdoj.gov
Telephone: 202-514-3204