# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : Case No. 1:21-CR-623 (CRC) |
| MICHAEL ECKERMAN and | : |
| KIRSTYN NIEMELA, | : |
| | : |
| Defendants. | : |

## UNITED STATES' MOTION IN LIMINE TO PRECLUDE CROSS-EXAMINATION AND EVIDENCE RELATED TO THE SHOOTING OF ASHLI BABBITT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves the Court to issue an order precluding the defendants from cross-examining former U.S. Capitol Police ("USCP") Officer K.Y. about, or introducing evidence of, the circumstances of the shooting of Ashli Babbitt during the riot at the Capitol on January 6, 2021, as those details are irrelevant and thus inadmissible under Fed. R. Evid. 402, as well as likely to confuse the jury and create a distracting side trial or circus and therefore should be excluded under Fed. R. Evid. 403.

## FACTUAL BACKGROUND

During the riot at the U.S. Capitol on January 6, 2021, a group of rioters, including Ashli Babbitt, attempted to break through doors to the Speaker's Lobby, which is adjacent to the House Chamber. Law enforcement officers, including former USCP Officer K.Y., were standing in front of the closed doors, which officers had barricaded in an attempt to protect lawmakers and their staff from the rioters. At the time, lawmakers and their staff were still in the process of evacuating the Capitol. Some were still trapped in the nearby House Chamber as well as offices within the Speaker's suite. Meanwhile, some of the rioters amassed on the other's side of the Speaker's

Lobby doors were expressing their intent to harm lawmakers. The law enforcement officers repeatedly ordered the rioters to get back but the rioters ignored their commands.

At approximately 2:44 p.m., a rioter smashed a glass window in the Speaker's Lobby door. With the help of other rioters, Ashli Babbitt attempted to climb through that smashed window. Viewing her conduct as a threat to his own safety and that of the members of Congress and staff he was sworn to protect, a law enforcement officer—but not Officer K.Y.—fired a single shot at Babbitt, who died from her injuries soon after.

## ARGUMENT

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Although relevant evidence is generally admissible, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.

Even relevant evidence, however, may still be excluded. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In a criminal case, a defendant's constitutional right to present a defense extends only to relevant evidence, and even relevant evidence may be subject to reasonable restrictions on admissibility, such as those found in Rule 403. *See Rock v. Arkansas*, 483 U.S. 44, 55 (1987) ("Of course, the right to present relevant testimony is not without limitation.").

"[T]he burden is on the introducing party to establish relevancy," *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990), as well as admissibility under other evidentiary rules. Further, courts of appeals "afford broad discretion to a district court's evidentiary rulings" out of "deference to a district court's familiarity with the details of the case and its greater experience in

evidentiary matters." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008); *see also United States v. Abel*, 469 U.S. 45, 54 (1984) ("Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Here, in Count Two of the Superseding Indictment, defendant Eckerman is charged with "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidate[ing], and interfere[ing] with . . . Officer K.Y.," in violation of 18 U.S.C. § 111(a)(1).  Dkt. 24.  The United States will present evidence at trial showing that defendant Eckerman's assault of Officer K.Y. occurred just inside the Memorial Doors on the first floor of the Capitol building, and that shortly thereafter, Officer K.Y. ascended to the second floor, where he was part of the group of officers defending the Speaker's Lobby doors against the mob and where he witnessed the shooting of Ashli Babbitt.

The Babbitt shooting sparked an extensive internal USCP investigation, which included an interview of Officer K.Y. on February 4, 2021.  Portions of a report summarizing that interview and the interview transcript have been provided to the defendants in discovery.  The United States anticipates that one or both defendants may seek to cross-examine Officer K.Y. about his actions with respect to the Babbitt shooting, or even introduce evidence about the Babbitt shooting in an attempt to undermine Officer K.Y.'s testimony or minimize the defendants' conduct.  The Court should preclude the defense from engaging in such tactics.

First, the circumstances surrounding the Babbitt shooting are completely irrelevant to this trial.[1]  The Babbitt shooting occurred after the charged conduct, on a different floor of the Capitol

---

[1] The government should flag, however, that it expects the defense to cross Officer K.Y. regarding statements he made to USCP internal investigators about the incident near the Memorial Doors at the heart of the 111(a) charge against defendant Eckerman—a statement he gave as part of the Babbitt shooting investigation. If necessary to respond to *proper* impeachment, the government may need to establish *the fact* that Officer K.Y. witnessed the

3

building, and involved a different officer's actions against a different rioter.  There are no aspects of the Babbitt shooting that "make a fact [about these defendants' conduct] more or less probable than it would be without the evidence," let alone any facts "of consequence in determining the action."  *See* Fed. R. Evid. 401.  For example, facts surrounding the Babbitt shooting do not bear on whether the Capitol building and grounds were restricted on January 6, 2021; whether the defendants unlawfully entered the building or remained on the grounds; or whether their presence interfered with Congress's ability to certify the 2020 presidential election or the Secret Service's ability to protect the Vice President.  Similarly, facts surrounding the Babbitt shooting have no relation to whether defendant Eckerman pushed Officer K.Y. earlier in the riot, whether that push caused Officer K.Y. to fall down the stairs, whether that push interfered with Officer K.Y.'s ability to carry out his duties to protect the Capitol, and whether defendant Eckerman's actions were part of a civil disorder.  As such, the Babbitt shooting is irrelevant to this trial, other than as part of the chronology of Officer K.Y.'s movements on January 6, 2021, and as an illustration of the riot's severity, which resulted in trauma necessitating counseling for Officer K.Y.

Nor do Officer K.Y.'s actions near the Speaker's Lobby doors (the area where Babbitt was shot) constitute proper impeachment material.  Officer K.Y. was not subjected to any discipline, much less criminal charges, as a result of his actions on January 6, 2021.  As such, the Babbitt shooting is not "probative of the character for truthfulness or untruthfulness of the witness," and should be excluded as inadmissible extrinsic evidence under Rule 608(b).  *See* Fed. R. Evid. 608(b)(1).

Even if the Court deems the Babbitt shooting marginally relevant under Rules 401 and 402, the Court should tightly restrict questioning of Officer K.Y. and introduction of other

---

Babbitt shooting and the subsequent internal investigation, as well as the effects of the shooting and investigation on him,.

4

evidence about the Babbitt shooting under Rule 403.  The Babbitt shooting was well publicized and is regarded by some as highly controversial.  Allowing the defendants free rein to question Officer K.Y. about the Babbitt shooting will distract, confuse, and potentially inflame the jury without providing any meaningful probative value as to the issues in dispute in this case.  *See, e.g.*, *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (affirming exclusion, pursuant to Rule 403, of evidence of other bad acts by plaintiff that would result in a "mini-trial" on ancillary issues).  Because the circumstances of the Babbitt shooting have little, if anything, to do with the issues before the jury in this case, the danger of unfair prejudice and confusion to the jury substantially outweighs any probative value generated by this evidence.  The Court should not permit the defendants to create a distracting side show or put Officer K.Y. on trial, particularly for a shooting he witnessed but did not commit.

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests that this Court preclude improper cross-examination or evidence related to Officer K.Y.'s observation of the shooting of Ashli Babbitt by another law enforcement officer.

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481 052

*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney
Florida State Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
michael.gordon3@usdoj.gov
Telephone: 813-274-6370

*/s/ Jessica Arco*
JESSICA ARCO

                                                                             Trial Attorney-Detailee  
                                                                             D.C. Bar No. 1035204  
                                                                             601 D St., NW  
                                                                             Washington, D.C. 20530  
                                                                             jessica.arco@usdoj.gov  
                                                                             Telephone: 202-514-3204