UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Case No. 21-cr-623 (CRC) |
| KIRSTYN NIEMELA, | : | |
| | : | |
| Defendant. | : | |

**RESPONSE IN OPPOSITION TO DEFENSE MOTIONS IN LIMINE TO PRECLUDE GOVERNMENT ARGUMENTS FOR VICARIOUS CRIMINAL LIABILITY AND TO EXCLUDE EVIDENCE CONCERNING CONDUCT BY OTHERS THAN DEFENDANT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following response in opposition to the defendant's motions *in limine* to preclude government arguments for vicarious criminal liability, ECF No. 63, and to exclude evidence concerning conduct by others than the defendant,[1] ECF No. 64. For the reasons stated herein, defendant Niemela's motions should be denied.

As a general matter, the government agrees that Niemela is not liable for the conduct of people around her in the Capitol building on January 6, 2021.[2] But from there, Niemela incorrectly extrapolates that "the government will suggest the jury may consider <u>other</u> persons' conduct to find that the actus reus elements of Ms. Niemela's charges are satisfied." ECF No. 63 at 1; *see*

---

[1] Because the defendant's motions are substantially similar in substance, the government addresses them together.

[2] Niemela could face criminal liability, of course, for any acts that she aided or abetted. 18 U.S.C. § 2. While Niemela notes that "the government has not charged a conspiracy, nor aiding and abetting" (ECF No. 63 at 3), accomplice liability is always at issue, whether or not explicitly charged in the indictment or information. *United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991) ("an indictment need not specifically include an aiding and abetting charge because, whether specified or not, the federal statute creating liability for aiding and abetting . . . is considered embodied in full in every federal indictment") (internal quotations omitted).

*also* ECF No. 64 at 3.  This is not what the government has argued in its prior pleadings, nor what it will argue at trial.  Rather, the conduct of people who were near Niemela in the Capitol and within the restricted perimeter is relevant to explain how her conduct was disorderly and disruptive, as well as to prove her motive and *mens rea*.  Niemela's argument to the contrary mischaracterizes the government's position and the law of aiding and abetting.

## ARGUMENT

I.  **The Conduct of Other Rioters Is Relevant to Proving Niemela's Disorderly and Disruptive Conduct.**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  "[T]here is no such thing as 'highly relevant' evidence or ... 'marginally relevant' evidence.  Evidence is either relevant or it is not." *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993).

Although the defendant was only one participant in the events at the Capitol on January 6, evidence of the broader context of the events of the day is both relevant to, and probative of, the alleged offenses.  It cannot reasonably be disputed that the mob's collective action disrupted Congress.  This is important because Counts Four and Six of the Superseding Indictment charge the defendant with committing disorderly and disruptive conduct.  18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D).  Both crimes require proof of disorderly and disruptive conduct: with the intent to impede or disrupt government business (Count Four) or an orderly session of Congress (Count Six).  *Id.*  And Count Four carries the additional requirement that the conduct "*in fact*, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(2) (emphasis added).  As this Court previously defined in jury instructions for these charges, disorderly conduct includes conduct that is "unreasonably loud and disruptive under the

circumstances." *See United States v. Strand*, 21-cr-85, ECF No. 112 at 18.  In other words, context matters.

The defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on its massive numbers to overwhelm police, breach the Capitol, and disrupt the proceedings.  But for the defendant's actions alongside so many others, the riot likely would have failed to delay the certification vote.  *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).  While a jury will evaluate the defendant based on her own actions, the context of the defendant's actions necessarily must be placed before them.  And that context was a riot.

To prove that the defendant's conduct was disorderly and disruptive, and that the defendant's conduct in fact impeded or disrupted Congress, the government will present testimony from one or more U.S. Capitol Police (USCP) officers who will explain that the Capitol building was closed to the public on January 6, 2021.  No member of the mob was authorized to be in the Capitol, no member of the mob submitted to security checks, and the USCP assessed every member of the mob to be an active threat.  Given a variety of factors, including the size of the crowd and the existence of multiple breach points, Congress was forced to recess.  Congress could not resume its business for almost six hours, until the entire mob was cleared and the building swept for other dangers, such as explosives.  Niemela unlawfully entered and remained in the Capitol building, and USCP and Metropolitan Police Department officers had to expel her (and thousands of others) before Congress could return to work.  In this way, her conduct was *in fact*

disruptive. And proof of this requires evidence of the conduct of other rioters. As Judge Kollar-Kotelly explained in another January 6 case:

> The following metaphor is helpful in expressing what the statute [18 U.S.C. §1752(a)(2)] *does* require. Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption. Because Rivera's presence and conduct in part caused the continued interruption to Congressional proceedings, the Court concludes that Rivera in fact impeded or disrupted the orderly conduct of Government business and official functions.

*United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13. In other words, the nature of these crimes was a collective action in which defendant Niemela participated. This characterization is fair argument for the jury.

The government also intends to introduce evidence regarding USCP procedures leading up to January 6, 2021, including the existing security cameras. From the videos recorded by those cameras on January 6, 2021, the government has developed a comprehensive exhibit covering the events of the day.[3] The exhibit will show that as the certification proceeding at the Capitol began, a large crowd gathered outside the U.S. Capitol. Officers with the USCP and the Metropolitan Police Department (MPD) attempted to keep the crowd away from the Capitol building, but the crowd broke through several barriers on the West Front just before 1:00 pm. Another crowd gathered on the East Plaza of the building, encroaching on the area where the motorcade that brought Vice President Pence to the Capitol was located. Shortly before 2:00 p.m., the crowd on

---

[3] A similar montage exhibit has been admitted in every Capitol riot trial to date, including in misdemeanor-only trials. *See, e.g.*, *United States v. Vargas-Santos*, 21-cr-47 (RDM) (misdemeanor jury trial); *United States v. Martin*, 21-cr-394 (TNM) (misdemeanor bench trial); *United States v. Alford*, 21-cr-263 (TSC) (misdemeanor jury trial).

the West Front broke into the scaffolding, which was set up to construct the inauguration stage. At 2:13 p.m., individuals in the crowd forced entry into the U.S. Capitol building itself on the west side near the Senate. In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around 2:20 p.m. For the next several hours, rioters flooded the building and the grounds, while police attempted to clear them out. Given that the defendant was on the Capitol grounds by at least 2:00 p.m. and remained in the Capitol building until 2:44 p.m., these videos depicting the chaos that kept the police and members of Congress from performing their duties are relevant.

Evidence about the official proceeding, and its disruption, as well of the actions of the USCP with respect to the rioters, is also relevant to the charges in two respects. First, for Count Four, the government must prove that the defendant engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). The compilation exhibits establish how and when the disruption occurred. Second, for Counts Three and Four, the government must prove the defendant knowingly engaged in certain conduct in a restricted area.[4] The compilation exhibits help establish that element by showing law enforcement efforts, both before and during the breach of the restricted area, to keep unauthorized persons out of the restricted area.

The probative value of the compilation exhibits is even higher in a case such as this, where the defendant participated in disorderly and disruptive acts that contributed to the breach of three

---

[4] A defendant may violate 18 U.S.C. § 1752(a)(2) by engaging in disruptive conduct (with the appropriate *mens rea*) while "within such proximity" to a restricted area. The proof in this case will establish that the defendant was "in" the restricted area, not merely in close proximity to it.

separate police lines within the Capitol building—in the Crypt, by the Memorial Doors, and in the hallway leading to the House Chamber.

## II.     The Conduct of Other Rioters, Where Niemela Could Have Observed It (or Where She Discussed It), Is Relevant to Proving Her *Mens Rea* and Motive.

The conduct of other rioters is also relevant for another purpose. Where other rioters near Niemela did something that she could have observed, or where Niemela talked or wrote about the conduct of other rioters, their conduct is probative of her *mens rea* and motive. Niemela's motions curiously do not acknowledge the relevance of *mens rea* evidence at all. Instead, she ignores this critical piece of the government's argument to act as if the government is trying to impute other rioters' conduct to her.

Each of the charges here has an intent requirement. Here, the evidence showing other rioters' conduct, which the defendant did not shy away from and indeed joined, will help prove the exact *mens rea* the government must show—that she did not intend to be peaceful but rather to disrupt the government business of the day. It is neither novel nor controversial to provide the jury with evidence of the behavior of other people in the defendant's immediate vicinity as circumstantial evidence bearing on her state of mind. What she likely saw and heard while she acted is directly relevant to establishing her *mens rea* during those acts. Indeed, in other trials arising out of the January 6, 2021, riot at the Capitol, courts have permitted the government to make similar arguments about the relationship between the conduct of nearby rioters and other defendants' states of mind. *E.g.*, *Rivera*, Tr. 6/15/2022 at 198 (Closing Argument) ("Mr. Rivera was part of a huge collective of people who disrupted Congress and the staff as they worked. . . . He heard people chanting outside the building. "Whose house? Our house." He heard those same chants when he entered the building as well. He watched rioters confront law enforcement on the west front plaza and fight to fend off the mobs on the northwest stairs.")

To be sure, the defense may argue—if the evidence supports it—that Niemela failed to see, hear or understand what was happening around her.  But the defense should not be able to convert this argument into a legal principle that treats the events happening around Niemela as irrelevant or more prejudicial than probative.  Context matters.  The behavior of other rioters in the defendant's vicinity, together with other evidence, will establish Niemela's intent, motive, and *mens rea* when she joined them in unlawfully entering the Capitol, remaining inside, and breaching police lines to further penetrate the building.

### III. Evidence of Other Rioters' Conduct Is Not Unfairly Prejudicial.

Evidence depicting other rioters' conduct on January 6 does not offend Federal Rule of Evidence 403.  Rule 403 provides that a "court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).  Importantly, "Rule 403 establishes a high barrier to justify the exclusion of evidence." *United States v. Lieu,* 963 F.3d 122, 128 (D.C. Cir. 2020).

Here, the high probative value of the compilation exhibits and other videos showing the rioters' conduct is not substantially outweighed by potential prejudice to the defendant.  Rule 403 "does not bar powerful, or even 'prejudicial' evidence," nor does it require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (internal quotation marks omitted); *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998).  "The prejudice that the court must assess is the prejudice that "lies in the danger of jury misuse of the evidence." *See United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995).  To warrant exclusion, prejudice to the defendant must be

*unfair*, and the defense must show "compelling or unique" evidence of prejudice, *see id.*, distinct from the probative value of the evidence and distinct from the intrinsic prejudicial potential. Videos depicting the mob surely will be powerful to jurors, but it is not unfair to the defendant, who knowingly joined that mob in storming the Capitol and therefore contributed to the chaos that day, to show them. *See United States v. Matthew Mazzocco*, 1:21-cr-54-TSC, Oct. 4, 2021 Hr'g Tr. at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers."). The exhibits, taken together, will provide a fair and thorough picture of the defendant's actions in the broader context of a riot that she helped facilitate and that in fact disrupted the certification proceedings on January 6, 2021.

The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis). Thus, because the video exhibits depicting other rioters' conduct are not unduly prejudicial, and any potentially unfair prejudice can be addressed through an appropriate limiting instruction, it is appropriate for the Court to admit evidence, including the compilation video, showing the criminal conduct of rioters besides the defendant.

**CONCLUSION**

For the reasons stated above, the Court should deny Niemela's motions *in limine* concerning evidence that displays the criminal behavior of others. *See* ECF Nos. 63, 64.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ *Jessica Arco*
Jessica Arco
Trial Attorney-Detailee
D.C. Bar No. 1035204
601 D St., NW
Washington, D.C. 20530
jessica.arco@usdoj.gov
Telephone: 202-514-3204

/s/ *Michael M. Gordon*
Michael M. Gordon
Assistant United States Attorney
Florida Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
michael.gordon3@usdoj.gov
Telephone: 813-274-6370