**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **Criminal Case No.** |
| ) | |
| **Complainant** ) | **1:21-cr-00623  (CRC)** |
| ) | |
| **v.** ) | **1:22-cr-00025 (APM)** |
| ) | |
| **KIRSTYN NIEMELA,** ) | |
| ) | |
| **Defendant** ) | |

_____

**DEFENDANT KIRSTYN NIEMELA's
REPLY to SENTENCING MEMORANDUM**

Plaintiff KIRSTYN NIEMELA ("Niemela") by undersigned counsel, hereby submits to the

Court her Reply Sentencing Memorandum.


I. **INTRODUCTION**

The following matters most especially because (A) the Government writ large is clearly not

ready for a sentencing hearing on May 31, 2023, yet opposed a reasonable continuance[1] and (B)

Defendant Niemela insists that even the recitation of the Government of three items of criminal

history are false, including being time-barred and/or barred by type (kind), or simply wrong.[2]  Yet the

Government has not provided any supporting information for its claims of even these three minor

reports.

_____

[1]     In all January 6 related cases one cannot avoid the question:  What's the rush?  Or as said colloquially, where's the fire?  The U.S. District Court for the District of Columbia simultaneously complains and bristles under the unexpected workload, including cutting corners on due process, yet makes this worse by insisting on a scramble to pursue these cases at warp speed no matter what the cost (to the Defendants).

[2]     In one Sentencing Memorandum this law firm assisted with, the PSIR cited to a 1979 reckless driving charge, barred under the U.S. Sentencing Guidelines both as to the passage of time and explicitly excluded as to the type of charge not permitted to be counted under the USSG.  The persistent practice of the Probation Office and USAO in always including excluded items suggests that they are unaware of USSG requirements.

## II.  IRREGULAR PROCEDURAL HISTORY

The Court will recall that the Defendant Kirstyn Niemela requested a continuance of the sentencing hearing and associated filing deadlines including reasons explicitly so that she could research the details to be addressed therein, including documents of criminal history.

The U.S. Attorney's Office for the District of Columbia ("USAO") opposed the continuance and the Court denied the continuance.  The Court repeated that Sentencing Memoranda would remain due on May 24, 2023, and the hearing would occur on May 31, 2023.

However, the U.S. Probation Office of the District of Columbia did not file a Presentencing Investigation Report until May 24, 2023, the same day that the final Sentencing Memoranda were due from the USAO and the Defendant.

Therefore, the Defendant was due to file a Sentencing Memorandum the same day that the PSIR was filed under seal and available to John Pierce as attorney of record here while still dealing with an on-going jury trial in *United States v. Kenneth Joseph Thomas*.  This would require running the proposed draft that day past the client whose interests are at stake.

However, most significantly the 6 page PSIR[3] filed and provided to the Defendant's counsel does not contain any information about criminal history…. Yet the Government's Sentence Memorandum cites to the PSIR concerning alleged items (three total) of supposed criminal history.

How did the Government cite to paragraphs of the PSIR on criminal history that are not included in the PSIR provided to the Defendant?  How did the Government cite to the PSIR in its final Sentencing Memorandum filed on May 24, 2023, when the PSIR was only provided on May 24, 2023?

Again, Defendant's counsel does not suggest that the Probation Office isn't over-burdened

---

[3]    About 3 of the 6 pages consisting of a recommended colloquy for the Court to read to the Defendant.

with workload, but that it would clearly be best for all participants to do this _right_ instead of doing it _fast_. There is no upside that we are aware of to approaching these cases like an episode of "The Flash," or make more mistakes along the way.

Now, it is definitely true that Kirstyn Niemela could not be persuaded to cooperate in the Presentencing Investigation, which she is not required to do. Having had a simple trespass twisted beyond recognition by a Government that has lost her trust, she chose not to disclose items such as where she banks, the value of her 1999 truck, and other items that she views as incredibly intrusive and equally irrelevant. The USAO's notation that Niemela did not fill out consents for her financial information should remind us that the process is voluntary, not required.

As a result, the PSIR is short and has little details. But what details it does provide need to be correct or at least not misrepresented by the USAO. Typically, what official sources show as criminal history is something that would be uniquely in the province of Presentencing Investigation.

Typically, PSIR's recite the unproven allegations from the indictments or other charging documents as if those allegations were actually true. Here, mercifully, the Probation Office has refrained from reciting false, disputed, and unproven claims about Niemela's conduct. That is reserved here in this case for the Government's Sentencing Memorandum.

But without a review of the facts actually proven at trial, not merely asserted before arrest, the recommendations of the PSIR on sentencing would seem to be dissociated from the actual proof. This is not to say that the task of the Probation Office would be easy, separating out fact (what was actually proven) from the original allegations. Yet burdensome or not, the due process rights of U.S. citizens facing possible incarceration would rate as at least as important.

### III. UPDATE TO ALLEGED CRIMINAL HISTORY

In response to the Government's Sentencing Memorandum filed on May 24, 2023, Defendant Niemela went to the local court where she is and obtained some official court records on the Government's allegations.  These will be filed under seal because of the extensive personal information (addresses, driver's license number, etc.) included.  The total sentencing from prior convictions was zero (0) days and zero (0) fines not suspended (deferred).  The Court could

1) Entirely disregard assertions that are disputed and not resolved with solid evidence, or

2) Order the presentation of evidence either submitted or in an evidentiary hearing

### A. September 14, 2019 at DOLLY SHAKERS BAR & GRILL:  Nashua, NH

On September 14, 2019, shortly after midnight, Ms. Niemela was charged with a VIOLATION (it appears that Class A Misdemeanor was checked and that was then crossed out) in the 9th Circuit of Nashua in Hillsborough County, Case No. 459-2019-cr-3791, 19-61760-AR, Charge ID 1676121C, charging that the Defendant *(notations added)* --

> purposely caused a breach of the peace by making loud or unreasonable noises in a public place, outside of 38 East Hollis Street, which noises would disturb a person of average sensibilities, to wit, the defendant did yell "fuck these people," and *[sic ?]* conduct continued after a request to cease by Officer *[G.D.]* of the Nashua Police Department

Niemela reports that in 2019, Niemela entered a bar/restaurant, and started walking home.  She stopped at another establishment asking for a "light."  A verbal argument ensued insulting to Niemela.

As an "infraction only" counsel believes the incident is excluded from

the U.S. Sentence Guidelines criminal history evaluation.

On October 15, 2019, the case was resolved with a "deferred prosecution" and dismissed after one year of good behavior from October 15, 2019. The Court determined a penalty of $1,000 fine plus a $240 statutory assessment, and no jail time, but the entire case was deferred so that no sentence or penalty was in fact entered.

However, the U.S. Sentencing Guidelines **§4A1.2 - Definitions And Instructions For Computing Criminal History, Accessible at: HTTPS://GUIDELINES.USSC.GOV/GL/%C2%A74A1.2** requires that:

* * *

(c) **Sentences Counted and Excluded**
Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

* * *

Disorderly conduct or disturbing the peace
* * *

(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

* * *

Local ordinance violations (except those violations that are also violations under state criminal law)

* * *

Loitering
* * *

Public intoxication
* * *

Therefore, the incident is excludable as to type.

Furthermore, the U.S. Sentencing Guidelines **§4A1.2 - Definitions**

**And Instructions For Computing Criminal History** requires that:

> \* \* \*
>
>  **(f) Diversionary Dispositions**
>
> Diversion from the judicial process without a finding of guilt
> (*e.g.*, deferred prosecution) is not counted. A diversionary disposition
> resulting from a finding or admission of guilt, or a plea of *nolo contendere*,
> in a judicial proceeding is counted as a sentence under **§4A1.1(c)** even if a
> conviction is not formally entered, except that diversion from juvenile
> court is not counted.
> \* \* \*

Counsel for Defendant does not yet know how New Hampshire treats

a deferred prosecution diversionary disposition, and it would be incumbent

upon the Government to demonstrate that before including this incident.

However, the documents say that "the Complaint was placed on file"

"without finding" for 12 months – that is, not entered as result but placed on

the shelf, unentered.  That is, whatever the document says, it was never filed

or entered as an operative document.

However, the U.S. Sentencing Guidelines **§4A1.2 - Definitions And**

**Instructions For Computing Criminal History, Criminal History**

**Category,** also requires that:

The total points from subsections (a) through (e) determine the criminal
history category in the Sentencing Table in Chapter Five, Part A.
(a) Add **3** points for each prior sentence of imprisonment exceeding one year
and one month.
(b) Add **2** points for each prior sentence of imprisonment of at least sixty days
not counted in (a).

(c) Add **1** point for each prior sentence not counted in (a) or (b), up to a total of **4** points for this subsection.

(d) Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

(e) Add **1** point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of **3** points for this subsection.

Because no time of imprisonment was imposed, at most 1 point could

be counted if on other grounds the incident were not already excluded.

### B. September 14, 2019 at DOLLY SHAKERS BAR & GRILL:  Nashua, NH

Also on September 14, 2019, shortly after midnight, Ms. Niemela was

charged with a Class A Misdemeanor in the 9th Circuit of Nashua in

Hillsborough County, Case No. 459-2019-cr-3791, 19-61760-AR, Charge ID

16761206, charging that the Defendant did *(notations added)* –

purposely knowingly cause unprivileged contact to [T.D.] by pushing her with her hands.

On October 15, 2019, identically with and in parallel and as an integral

part, it appears, of the prior charge, the case was resolved with a "deferred

prosecution" and dismissed after one year of good behavior from October 15,

2019.  This appears to be a local ordinance and/or Disorderly conduct or

disturbing the peace excludable under the Guidelines.

No punishment – either fines or imprisonment – were assigned to this

charge, indicating that the prior charge was treated as part of the same case

and not separately.

Because no time of imprisonment was imposed, at most 1 point could

be counted if on other grounds the incident were not already excluded.  And because it was treated as one single case, at most 1 point could be imposed.

The documents say that "the Complaint was placed on file" "without finding" for 12 months – that is, not entered as result but placed on the shelf, unentered.  Therefore, this is also excluded as a diversionary disposition.

In other words, the distinctions under various State laws between a deferred disposition that is completely dismissed after a probationary period and those that count as a conviction really turn in part on whether the documents were filed, entered into the Court record.  The indications here are that New Hampshire never entered the documents during and after the conclusion of the one year deferral.  So this can only count as an arrest. Deferred dispositions have sometimes traditionally been mentioned euphemistically as if the judge puts the case in the desk drawer for a year and never acts upon the file if the time of good behavior is satisfied.  Without engaging a New Hampshire criminal attorney on local procedures (not just published law), that seems to be what these documents are saying.

## C.  May 16, 2021 at Southern New Hampshire Medical Center:  Nashua, NH

On May 16, 2021 at 7:25 PM, Ms. Niemela was charged with a Class A Misdemeanor in the 9th Circuit of Nashua in Hillsborough County, Case No. 459-210-1481, 21-31085-AR, Charge ID 1864811C, charging Disorderly Conduct in that the Defendant did *(notations added)* –

knowingly obstructed the flow of pedestrian traffic on the public entrance to any public building, in that she was standing in the entrance to Southern

New Hampshire Medical Center located at 8 Prospect Street preventing two citizens from receiving medical attention, and said conduct continued after a request to desist was made by Officer N. Markarian

The Government recites – although not referenced in the PSIR despite the USAO citing to paragraphs in the PSIR that in May 2021, there were charges of a verbal altercation about whether she should wear a mask at a hospital. However, even the Government acknowledges that "Ultimately, the case was resolved by being "placed on file without finding and good behavior for one year." *Id."* [PSR ¶ 64.]

Thus, even by the Government's admission as presented, the charge was dismissed after a year "without finding" (deferred finding) and is not a conviction. Therefore, it cannot be considered on sentencing under the U.S. Sentencing Guidelines.

Meanwhile the mention of two citizens seeking medical attention seems improbable in the extreme, that a regional hospital has only one (1) door and that any entrance is so small that a single person standing in the entrance would block the entire entrance of a major hospital. This obvious embellishment appears calculated to resolve a dispute with an excessive claim, which of course was later dropped on deferred disposition.

D.  Niemela reports an arrest that did not result in conviction in 2009 relating to marijuana.

This is both time-barred and excludable because it is only an arrest. Niemela has not

located those records yet.

E.  The Government recites – although not referenced in the PSIR despite the USAO citing to

paragraphs in the PSIR that in 2012, police charged Niemela with simple assault after she

and a group had verbal confrontations with a belligerent woman at a bar. Those charges

were dismissed against Niemela, as she recalls. Thus, this item would be both time-barred

and also not a conviction capable of being counted. Unfortunately, Defendant's counsel

has not yet seen documentation to confirm this. Ms. Niemela was not yet able to obtain

official documentation.

F.  The U.S. Sentencing Guidelines require that:

**§4A1.2.**     <u>**Definitions and Instructions for Computing Criminal History**</u>

  **(a)**     <u>**Prior Sentence**</u>

(1)     The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of <u>nolo contendere</u>, for conduct not part of the instant offense.

(2)     If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (<u>i.e.</u>, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence. <u>See also</u> §4A1.1(e).

For purposes of applying §4A1.1(a), (b), and (c), if prior sentences are treated as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. If consecutive sentences were imposed, use the aggregate sentence of imprisonment.
* * *

  (e)     Applicable Time Period

(1)     Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

* * *

Furthermore,

(2)     Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

10

(3)      ***Any prior sentence not within the time periods specified above is not counted.*** (Emphasis added.)

* * *

## IV. COURT IS REQUIRED TO DISREGARD DISPUTED ITEMS OR ELSE ORDER EVIDENCE, EVEN AS AN EVIDENTIARY HEARING IF NEEDED

### A. U.S. Sentencing Guidelines Do Not Permit Disputed Items To Be Considered In Sentencing

Anticipating the repeated pattern of the Government citing to the original charging documents as the truth of what happened, counsel for the Defendant pre-bunked many common errors, but also briefed to the Court the requirements under the U.S. Sentencing Guidelines.  The U.S. Sentencing Commission, Guidelines Manual, Annotated 2021 Chapter 6 - Sentencing Procedures, Plea Agreements, And Crime Victims' Rights explains:[4]

> Commentary
>
> Although lengthy sentencing hearings seldom should be necessary, ***disputes about sentencing factors must be resolved with care***.  When a dispute exists about any factor important to the sentencing determination, ***the court must ensure that the parties have an adequate opportunity to present relevant information.***  Written statements of counsel or affidavits of witnesses may be adequate under many circumstances.  See, e.g., United States v. Ibanez, 924 F.2d 427 (2d Cir. 1991).  ***An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues.***  See, e.g., United States v. Jimenez Martinez, 83 F.3d 488, 494-95 (1st Cir. 1996) (finding error in district court's denial of defendant's motion for evidentiary hearing given questionable reliability of affidavit on which the district court relied at sentencing); United States v. Roberts, 14 F.3d 502, 521(10th Cir. 1993) (remanding because district court did not hold evidentiary hearing to address defendants' objections to drug quantity determination or make requisite findings of fact regarding drug quantity); see also, United States v. Fatico, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979), cert. denied, 444 U.S. 1073 (1980).  The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.

---

[4]      **https://www.ussc.gov/guidelines/2021-guidelines-manual/annotated-2021-chapter-6**

In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial.  See 18 U.S.C. § 3661; see also United States v. Watts, 519 U.S. 148, 154 (1997) (holding that lower evidentiary standard at sentencing permits sentencing court's consideration of acquitted conduct); Witte v. United States, 515 U.S. 389, 399-401 (1995) (noting that sentencing courts have traditionally considered wide range of information without the procedural protections of a criminal trial, including information concerning criminal conduct that may be the subject of a subsequent prosecution); Nichols v. United States, 511 U.S. 738, 747-48 (1994) (noting that district courts have traditionally considered defendant's prior criminal conduct even when the conduct did not result in a conviction). Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy.  Watts, 519 U.S. at 157; Nichols, 511 U.S. at 748; United States v. Zuleta-Alvarez, 922 F.2d 33 (1st Cir. 1990), cert. denied, 500 U.S. 927 (1991); United States v. Beaulieu, 893 F.2d 1177 (10th Cir.), cert. denied, 497 U.S. 1038 (1990).  Reliable hearsay evidence may be considered.  United States v. Petty, 982 F.2d 1365 (9th Cir. 1993), cert. denied, 510 U.S. 1040 (1994); United States v. Sciarrino, 884 F.2d 95 (3d Cir.), cert. denied, 493 U.S. 997 (1989).  Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means.  United States v. Rogers, 1 F.3d 341 (5th Cir. 1993); see also United States v. Young, 981 F.2d 180 (5th Cir.), cert. denied, 508 U.S. 980 (1993); United States v. Fatico, 579 F.2d 707, 713 (2d Cir. 1978), cert. denied, 444 U.S. 1073 (1980).  Unreliable allegations shall not be considered.  United States v. Ortiz, 993 F.2d 204 (10th Cir. 1993).

*Id. (Bolded and italicized emphases added).*

B.  **Disputed Facts Not In Evidence:  Former Fianceé**

The Government in its Sentencing Memorandum depends upon as negative factors for sentencing "the observations of her former fiancée," which are also reflected in anonymous (or at least undisclosed)  wild reports by a person providing clearly false tips about Niemela that are obviously the former fiancée and/or others with an axe to grind.  Some of these reports sound like the disreputable gang of slanderers who are self-styled on-line researchers.  The Court may not consider these anonymous assertions of hearsay (not merely hearsay, but by unidentified people).  The Government would need to

call these people as witnesses or else withdraw all references to their slanderous comments, such as about Niemela always carrying an "illegal" gun and other exaggerations and falsehoods.[5]

### C.  Disputed Facts Not In Evidence:  No Disruptive or Disorderly Behavior

The Government argues that:  "While she did not physically use force against any officer—if she had, she would have been charged accordingly—she purposefully added her body to the mass of the mob, whose strength was its sheer numbers."

This of course, again, is unconstitutional and illegal collectivization of criminal liability. More violence is being done to the United States by the U.S. Department of Justice's "fundamental transformation" of criminal law to communal, collectivist, group, crowd, or even communist criminal liability than any altercations at the Capitol for a few hours on one day in January 2021.

Niemela cannot be convicted, sentenced, or punished for what other people did.  And the United States of America cannot survive as a Constitutional Republic if such outrageous legal heresies are tolerated.  What is at stake is not one day in January, but the loss of our Constitution now.

Even if we set aside the unconstitutional violation of collectivist criminal law, and try to tilt our heads to make some sense of the claim, the Government argues that

> **"she purposefully added her body to the mass of the mob, whose strength was its sheer numbers."**

There is of course no evidence of any of this and it is disputed.  The Court may not consider such assertions for sentencing without first engaging in a fact-finding enterprise.

The allegation of course both explicitly and in substance is:  ***purposefully.***  That is, somehow

---

[5]        In fact, it would be almost impossible to have an "illegal" gun in New Hampshire, which has almost no gun laws.  **https://www.nraila.org/gun-laws/state-gun-laws/new-hampshire/**  Thus the FBI's source is clearly making false statements in his "tips."  The FBI agent who included this in the arrest Statement of Facts should have taken a moment to check New Hampshire laws before repeating that slander under oath and to ask enough questions to determine the tipsters bias as an ex-fiancee.

unknown to the Court or the Defendant's counsel – remembering that there are no allegations of coordinated action between Niemela and anyone else – one can "purposefully" add their body to a mob.  There is no such law.  Niemela is not charged with any conspiracy, nor could there be here.

Counsel has no idea outside of the world of hyperbolic political rhetoric what it means to "purposefully" much less in other ways "add her body to the mass of the mob," and suspects the Government doesn't know with the precision required of criminal law, either.  But this is certainly not undisputed.  This is as deeply disturbing as another judge's self-described metaphor of raindrops on a baseball field as over-riding the requirements of proving individual guilty by individual defendants.

Counsel does not see how the mob's "strength was its sheer numbers."  The mob's "strength" was that for public relations and political reasons the leadership of the Congress had only about 20% of the U.S. Capitol Police officers report to work that day, with others sitting at home on paid leave, and failing to ask for 10,000 to 20,000 National Guard troops (about 153 were requested purely for traffic control throughout the city, and this was granted by the Pentagon) to at least be on standby.  The leadership of the Congress never even closed the 10 ton, 17-foot-high, solid bronze "Columbus Doors" at the entrance to the Rotunda on the East central stairs.[6]  Congress which spends trillions never paid for permanent or durable signs (only paper photocopies 11 inches by 14 inches, possibly laminated) on moveable bike racks.  Therefore, counsel and Niemela dispute that the mob had any "strength" or that its strength was "its numbers" rather than the dereliction of duty of Congressional leadership – at the expense of their employees, law enforcement officers – in confusing the mob into thinking it was permitted to be on the public park known as the U.S. Capitol Grounds and inside the Capitol where school children by the thousands tour each year on school field trips.  In any event, such assertions are disputed and have not been proven. (Counsel and Niemela do not suggest that this

---

[6]         A second set of doors called the East Rotunda Doors stand immediately behind the Columbus Doors when the Columbus Doors are closed.  Those were closed but were never breached from the outside.

minimizes anyone who – unprovoked – assaulted police, but neither does it justify some imaginative gossamer web holding innocent people accountable for merely wandering in to the Capitol to take a look around, and then voluntarily left without being asked.  Responsibility is not a light switch.)

### D.  Disputed Facts Not In Evidence:  No Evidence of Parading, Demonstrating, or Picketing

Initially, the Court and the Government would be violating the U.S. Constitution, First Amendment, by prosecuting, convicting, or sentencing Niemela for "parading," "demonstrating," or "picketing," if those terms mean – we don't actually know of course – only an expression of First Amendment protected speech.  Therefore, only some disruptive form of "parading," "demonstrating," or "picketing," could be considered as distinctly different from First Amendment expression.[7]

However, there are other parallel statutes which address any sort of actual disruption or damage or violence in the Capitol or any federal building.  Thus we must consider only the kind of "parading," "demonstrating," or "picketing," which is in and of itself _NON-DISRUPTIVE_, non-violent, and not harmful in itself.  Again, other statutes address those types of actions, such as 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D);  18 U.S.C. § 1752(a)(4); or 18 U.S.C. § 5104(e)(2)(F).  And "parading, demonstrating, or picketing" must be very narrowly construed to avoid violations of the First Amendment and multiplitious redundancy.

Since was no evidence whatsoever presented of any "parading," "demonstrating," or "picketing," by Niemela, the Court cannot consider on sentencing assertions that are plainly false.

---

[7]     The USAO and some judges seem to be very bothered by references to the First Amendment. Obviously, the correct analysis is that if we excise from the situation anything that is protected speech or petitioning the government, what evidence and conduct remains?  The issue is not whether the First Amendment covers everything, but that First Amendment protected conduct must be deleted from the scene to see if what is left might be a crime.   The issue is whether legitimate allegations establish a crime.

**E.  Disputed Facts Not In Evidence:  No Violent Behavior by Niemela**

The Government asks the Court to rely upon for sentencing its hyperbolic, frequent claim that

> "Defendant Kirstyn Niemela, a 35-year-old construction worker, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count,"[8]

However, unless words and chanting count as "violence" as in woke philosophy, it is undeniable that Niemela did not engage in any violence.  No, actually, Niemela did not speak or chant, either, that we know of.  So why does the USAO ask the Court to consider, once again, for sentencing Niemela something that has nothing whatsoever to do with Niemela?

**F.  Facts Not in Evidence:  No Violence Committed by Niemela:**

Incredibly, the Government argues that:

> Notably, for a misdemeanor defendant like Niemela, the absence of violent or destructive acts is not a mitigating factor. Had Niemela engaged in such conduct, she would have faced additional criminal charges.

Here as elsewhere, the Government is actually asking this Court to consider on sentencing Niemela guilty of violent or destructive acts (for the purpose of sentencing) even while acknowledging that Niemela did not commit any violent or destructive acts.

**G.  Disputed Facts Not in Evidence:  No Threat to Transfer of Presidential Power**

Under the U.S. Constitution, the Twelfth and Twentieth Amendments and Chapter 3 of the U.S. Code, a newly elected President assumes the occupancy of the perpetual office of the Presidency on January 20 every four years (the year after the Electoral College meets in December).

No presidential power is transferred on December 23 or January 6 every four years.

---

[8] Niemela, the client, insists upon knowing what being a female construction worker has to do with sentencing.

The new occupant of the Presidency becomes President automatically by operation of law, without any other act or action, spontaneously upon the local time in Washington, D.C. turning from 11:59 AM to 12:00 noon on January 20.  Presidential power is transferred by the rotation of the Earth, making the time turn noon, which does not respond to any opposition forcible or otherwise.  Why does the Government so pervasively seek to inflame judges and juries with clearly false hyperbole?

**H.  Disputed Facts Not in Evidence:  Social Media Posts did Not Advocate Violence**

The Government also offers its own groundless interpretations of Niemela's statements and social media posts.  First, the USAO would be in violation of the U.S. Constitution to seek to punish Niemela for her public statements and the Court would also be violating the First Amendment to consider them.  Therefore, the Jury could not constitutionally find any such facts.

Free Speech can only be punished under the narrow incitement standards set forth by the U .S. Supreme Court in *Brandenburg v. Ohio,* 395 U.S. 444 (1969) and *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).  The Courts have repeatedly protected speech that is "vile" or "offensive."

Therefore, not only was there no finding of non-incitement (Brandenburg) speech, but the Government repeatedly engages in misrepresenting people's comments.

**I.  Disputed Facts Not in Evidence:  A Crowd or Riot Cannot "RELY" on Anything**

Continuing the groundless hyperbole which ought to offend this Court and all other judges hearing January 6 cases, the Government argues that:

> The Court must also consider that Niemela's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers and disrupt the congressional proceedings.

The Court is asked to recall that Niemela is not charged or even hinted at any coordination or

joint planning or conspiracy with anyone else.  There is no suggestion that Niemela did anything

because of, in coordination with, or discussion with anyone else.

Crowds do not think.  People do.  Crowds do not speak.  People do.  Crowds cannot "rely" on

anything.  Crowds cannot make plans.  People make plans.

It is impossible for a "riot" to "rely on numbers" to carry out some collective purpose.

If 10 people in a crowd of 1000 yell something, how does the Government "know" that the

other 995 aren't standing there thinking to themselves "**Boy, that was really dumb!**" in

disagreement?  How many people co-existing around others have to disagree before the mind-reading

operation of the FBI detects that the crowd does not share a monolithic unanimous belief or purpose?

Why the Government wants the Court to believe that a crowd "relied on" anything deserves an

explanation.  The Court must emphatically not consider context or the actions of crowds or the

actions of others.  Due Process of Law under the Fifth Amendment and other provisions of the U.S.

Constitution require proof of individual conduct by an individual Defendant.  (And recall that never

before in human history has there been so much evidence as body-worn camera video, surveillance

system video, and smart phone video recordings from private individuals.)

### J.  Disputed Facts Not in Evidence:  Government Imagines what Niemela Saw

The USAO imagines what people *might have* saw but did not, falsely claiming that:

> After the rally, Niemela and her companions, including Chiguer
> and Eckerman, walked to the U.S. Capitol. While on the west side
> of the Capitol grounds, they observed police officers wearing riot
> gear and attempting to contain the mob. They saw rioters fighting
> the police. They heard explosions. They smelled gaseous irritants.
> They walked past fencing that bore signs reading "AREA
> CLOSED By order of the United States Capitol Police Board"
> every few feet. GEX 203.

However, the Government seems to have trouble with the concept of time.  None of these

things were observable at the time that Niemela approached the Capitol. With the fourth dimension

of time, sometimes things exist. And then they don't. There were signs put up. Later, the signs were

gone. The Government persists in the false idea that if flimsy paper signs were put up in the morning

on moveable bike racks, that those signs are eternal and not subject to being moved or torn down.

The Government seems unable to contemplate that signs were visible at one snapshot in time, and

later the signs were gone. Niemela did not hear any explosions and most emphatically did not see any

police officers deterring or discouraging entry into the Capitol, even though about 80% of the USCP's

sworn officers were ordered to stay home that day. Niemela did not smell any gaseous irritant.

### K.  Disputed Facts Not in Evidence:  Money Raised as Donations

In many January 6 cases this law firm observes, the Government is systematically trying to

deprive Defendants of their Sixth Amendment right to counsel, not only in maligning lawyers but

seeking to prevent Defendants from raising donations to pay for their legal defense.

Websites designed for fund-raising like GoFundMe displayed a severe hostility to

conservatives and Republicans and fell into disfavor. An alternative GiveSendGo has been relied

upon by many Defendants. However, GiveSendGo shows the total amount of money *ever* raised, but

the Government is treating that as if it were a bank account with money sitting there unspent. The

Government asks this Court to impose

> a fine of $3,672 (reflecting the amount of money raised on
> Niemela's behalf to cover her personal *and* legal expenses in this
> matter, using an appeal to donors focused on her participation in
> the January 6 riot at the Capitol)

This request makes no sense unless the Government thinks that there is $3,672 sitting on

deposit, unspent and unused, even though Niemela has had three different teams of lawyers since her

arrest on January 18, 2022, and there are of course extensive expenses for trial and other actions even

before lawyers ever hope to maybe get paid a trifle, as well as disruption to normal income and life.

**CONCLUSION**

The Court is not empowered under the sentencing statutes and guidelines to accept disputed facts not proven by the Government within any sentencing decision. The Court may simply ignore such assertions and sentence Niemela without considering those or stop and order evidence to be presented on those assertions. The Court should postpone the sentencing hearing.

Dated:  May 27, 2023                     RESPECTFULLY SUBMITTED
                                         **KIRSTYN NIEMELA,** *By Counsel*


                                         _____/s/__John M. Pierce_____
                                         John M. Pierce, Esq.
                                         John Pierce Law Firm
                                         21550 Oxnard Street
                                         3rd Floor, PMB #172
                                         Woodland Hills, CA 91367
                                         Tel: (213) 400-0725
                                         Email: *jpierce@johnpiercelaw.com*
                                         Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that this document is being filed on this May 27, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants. From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

                    MICHAEL MATTHEW GORDON, ESQ.
                    DOJ-USAO
                    U.S. Department Of Justice
                    400 North Tampa Street, Suite 3200
                    Tampa, FL 33602
                    (813) 274-6370
                    **michael.gordon3@usdoj.gov**

_____/s/_____
John M. Pierce, Esq.