IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. |
| Complainant ) | 1:21-cr-00623 (CRC) |
| v. ) | 1:22-cr-00025 (APM) |
| KIRSTYN NIEMELA, ) |  |
| Defendant ) |  |

**DEFENDANT NIEMELA's FINAL SUPPLEMENT TO HER
SENTENCING MEMORANDUM**

Defendant KIRSTYN NIEMELA ("Niemela") by undersigned counsel, hereby submits this Final Supplement to Defendant's Sentencing Memorandum.

Niemela offers six (6) points in this Supplement:

1. Niemela is essentially a first-time offender;[1] and probation is the presumed sentence for a first-time misdemeanant.[2]

2. The government's proposed scoring of disorderly conduct as a ten-point base offense level is preposterous, under any plain reading of the USSG, legal definitions, or any other guiding principle of law.  Disorderly conduct should be scored as a <u>two-point</u> base-

---

[1] Niemela's prior arrests and brief detentions should merit no criminal history points.  Niemela concedes she has had bouts with substances, alcohol and depression, and protested unnecessary lockdowns and mask-wearing rules in 2020 and 2021.

[2] Research shows a "weak relationship between incarceration and crime reduction, and highlights proven strategies for improving public safety that are more effective and less expensive than incarceration." The best way to promote public safety and ensure that convicted persons can lead law-abiding lives is through broad use of non-incarceration sentences, especially since "incarceration does little to change a person's behavior" and persons sentenced to prison have
 20 18 U.S.C. § 3553(a)(2)(D). Vera Institute of Justice, Overview of The Prison Paradox: More Incarceration Will Not Make Us Safer (July 2017), https://www.vera.org/publications/for-the-record-prison-paradox-incarceration-not-safer

    offense, consistent with creating a public nuisance, disturbing the peace, or other minor crimes.  Disorderly conduct is <u>not</u> 'impeding' or 'obstructing officers,' as suggested by the government (and, unfortunately the U.S. Probation office).

3. Niemela requests an order removing her from the FBI's no-fly or "red flag" or "social credit" lists, which she is currently subject to without due process.

4. Niemela damaged no property on Jan. 6, never threatened nor had physical contact with any law enforcement, never shouted or yelled inside the Capitol, and entered the Capitol through an unobstructed unposted doorway following scores or hundreds of others,

5. Niemela must not be punished for the acts of others; or for political advocacy or for post-event Facebook posts giving voice to abstract political hyperbole.

6. Niemela's convictions for "disorderly conduct in a restricted area" and "disorderly conduct in the U.S. Capitol" are essentially the same crime, in violation of double jeopardy principles.

**The government's (and probation office's) proposed 10-point "base offense level" for "disorderly conduct" is preposterous on its face.**

    The government's (and oddly it seems, the US Probation Office's) creative math begins with a notion that "since there is no applicable Chapter" for disorderly conduct in the USSG appendix, the Court should apply the points attributable to "obstructing or impeding officers" as "the most analogous guideline." See U.S.S.G. § 2X5.1. Here, that is U.S.S.G. § 2A2.4, "Obstructing or Impeding Officers." (Paragraph 52 of the PSR bizarrely adopts the government's notion, stating that "The guideline for 18 USC § 1752 offense is found in USSG §2A2.4 of the guidelines. That section provides that an offense involving obstructing or impeding officers has a *base offense level of 10*."

Section 1752(a)(2) "disorderly conduct" is a misdemeanor—among the pettiest offenses in the Criminal Code; whereas "obstructing or impeding officers" as chosen by the prosecution and probation office, applies to felonies *punishable by years in prison*. Thus, the base line chosen by the government and probation office is plainly wrong.[3] Nothing in the §1752(a)(2) statute or the charge against Niemela *even mentions obstructing or impeding officers*. If the government had any evidence that Niemela obstructed or impeded officers on Jan. 6, the government surely would have charged Niemela under Section 231 or even section 111(a) (both serious felonies).

Sentencing law requires that when defining the character of particular offenses, a court should look to federal law and consider such generic sources as the Model Penal Code and legal dictionaries to define these offenses. See *United States v. Elmore*, 108 F.3d 23 (3rd Cir. 1997) at 25-26; cf. *Taylor v. United States*, 495 U.S. 575, 598 n. 8, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (citing the Model Penal Code as support for the generic definition of "burglary").

A person may be convicted of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, he "makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present." Model Penal Code § 250.2(1) (1980). "Disturbing the peace" is similarly defined as "[t]he criminal offense of creating a public disturbance or engaging in disorderly conduct, particularly by making an unnecessary or distracting noise." Black's Law Dictionary 183 (7th ed. 1999). These offenses typically are directed at the public at large, and need not involve any specific threat of property damage or personal injury.

---

[3] Note that even §2X5.2 of the USSG provide that incomparable "Class A Misdemeanors (Not Covered by Another Specific Offense Guideline), should have a base offense level of 6.

The Model Penal Code provides that:

A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he

(a) engages in fighting or threatening, or in violent or tumultuous behavior; or

(b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or

(c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Model Penal Code § 250.2(1) (1980).

**While the USSG does not explicitly provide a base offense score for disorderly conduct, the USSG itself describes disorderly conduct as such a petty offense that a prior conviction for disorderly conduct merits <u>no criminal history points whatsoever</u> unless the defendant served substantial jail time for it.**

USSG §4A1.2 (2)(c) provides that "Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

*Careless or reckless driving*

*Contempt of court*

**<u>*Disorderly conduct* </u>*or disturbing the peace*** 

*Driving without a license or with a revoked or suspended license*

*False information to a police officer*

*Gambling*

*Hindering or failure to obey a police officer*

*Insufficient funds check*

*Leaving the scene of an accident*

*Non-support*

> *Prostitution*
>
> *Resisting arrest*
>
> *Trespassing.*

Thus, the USSG itself regards "disorderly conduct" as so petty that it merits <u>no criminal history points whatsoever</u> unless the defendant served significant (30 days or more) jail time over it.[4]

**Alternatives to Incarceration are an Important Mechanism to Promote Public Safety and Meet the Purposes of Sentencing.**

Encouraging alternatives to incarceration for "first offenders" and other individuals who need not be incapacitated to protect the public is a critically important goal of the guidelines. Research shows a "weak relationship between incarceration and crime reduction, and highlights proven strategies for improving public safety that are more effective and less expensive than incarceration."[5] The best way to promote public safety and ensure that convicted persons can lead law-abiding lives is through broad use of non-incarceration sentences, especially since "incarceration does little to change a person's behavior" and persons sentenced to prison have

---

[4] Professor Alexandra Natapoff, who has identified the numerous "systemic implications" of misdemeanor prosecutions, including how "misdemeanor processing is the mechanism by which poor defendants of color are swept up into the criminal justice system (in other words, criminalized) with little or no regard for their actual guilt." Alexandra Natapoff, Misdemeanors, 85 S. Cal. L. Rev. 1313, 1313 (2012). The history of misdemeanor prosecutions shows that they have been "social and economic governance tools" used predominantly in urban areas to "manage various disadvantaged populations." Alexandra Natapoff, Criminal Misdemeanor Theory and Practice, Oxford Handbooks Online 3 (2016).  Many minor offenses have significant impact on people of color and the poor. "Police use loitering, trespassing, and disorderly conduct arrests to establish their authority over young black men, particularly in high crime areas, and to confer criminal records on low-income populations of color." The over-policing of poor neighborhoods of color caused by the use of "zero-tolerance" policies often results in disproportionate convictions for loitering, trespassing, and disorderly conduct. See generally K. Babe Howell, Prosecutorial Discretion and the Duty to Seek Justice in an Overburdened Criminal Justice System, 27 Geo. J. Leg. Ethics 285, 286 (2014). In addition, driving on a suspended license, which constitutes a sizable portion of local misdemeanor dockets, is an offense that has a disproportionate impact on the poor. Such offenses criminalize poverty because suspensions often occur when a low-income person cannot afford to pay the fine for a simple traffic violation.

[5] Vera Institute of Justice, Overview of The Prison Paradox: More Incarceration Will Not Make Us Safer (July 2017), https://www.vera.org/publications/for-the-record-prison-paradox-incarceration-not-safer.

**Niemela has been unlawfully placed on flight restriction status in violation of the due process clause.**

The Constitution requires that life, liberty, or property may never be taken without due process and just compensation. The DOJ has wrongly placed Niemela on "red flag" flight restrictions which subject her to increased security when flying. Niemela requests an order for the FBI and DOJ to lift these restrictions.

Dated: June 8, 2023               RESPECTFULLY SUBMITTED

**KIRSTYN NIEMELA,** *By Counsel*

/s/ John M. Pierce
John M. Pierce, Esq.
John Pierce Law Firm
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: *jpierce@johnpiercelaw.com*
Attorney for Defendant

/s/ Roger I. Roots
Roger I. Roots, Esq.
John Pierce Law Firm
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (775) 764-9347
Email: *rroots@johnpiercelaw.com*
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

       I hereby certify that this document is being filed on this June 8, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants.  From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.